**Leslie Linxwiler YOUNG, Appellant,**

v.

**John Marcus YOUNG and Service Electric Supply, Inc., Appellees.**

No. 05–92–00409–CV.

Court of Appeals of Texas, Dallas.

April 23, 1993.

Ann Crawford McClure, Dallas, for appellant.

William H. Shields and Paul T. Fanning, Dallas, for appellees.

Before THOMAS, MALONEY and CHAPMAN, JJ.

## OPINION

CHAPMAN, Justice.

This appeal arises out of a divorce action between Leslie Linxwiler Young (Wife) and John Marcus Young (Husband). The issue is whether Wife was entitled to a jury determination of whether she voluntarily executed a post-marital property agreement (the agreement) after a master in chancery concluded that she had voluntarily executed the document. Because we conclude that the trial court erred in denying a trial de novo before a jury, we sustain Wife's points of error.[1] Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 1978. The agreement was executed on October 7,

---

1. In the first point of error, Wife asserts that the trial court erred in denying a de novo hearing following her objections and exceptions to the master's recommendations. In a related second point of error, Wife asserts that the trial court's ruling resulted in a denial of her constitutional right to a jury trial.

1983. In the agreement, the parties identified their separate property and partitioned their existing community property. In addition, the agreement provided for the partitioning of community property to be acquired in the future.[2]

Wife filed for a divorce in November 1987, and she paid a jury fee in May 1988. The validity of the agreement became the focus of the divorce proceedings because the net effect of its terms and conditions was that no community property could be accumulated during the marriage.

Pursuant to the parties' request, the trial court entered an Agreed Order on Appointment of Master in Chancery (the agreed order). The master conducted evidentiary hearings on several issues, including whether Wife voluntarily executed the agreement. On May 14, 1991, the master filed his report in which he found that Wife voluntarily executed the agreement. Wife timely filed her special exceptions to the master's recommendation on May 24, 1991.[3]

Approximately one month later, the trial court conducted a hearing on Wife's exceptions to the master's recommendation. During the hearing, trial counsel for both parties argued whether Wife was entitled to a trial de novo on the issues specifically objected to. The trial court denied Wife's request for a trial de novo and adopted the master's recommendations.

A final hearing on the divorce was held on September 9, 1991. The purpose of the hearing was to divide any property not covered by the agreement. At that time, Wife again requested a trial de novo before a jury on the issue of whether she voluntarily executed the agreement. This request was again denied. Wife perfected this appeal after the decree of divorce was entered on October 11, 1991.

## PARTIES' CONTENTIONS ON APPEAL

Wife argues that the agreed order was made pursuant to rule 171 of the Texas Rules of Civil Procedure.[4] Therefore, Wife contends that under the case law interpreting rule 171, the filing of the special exceptions to the master's report was sufficient to allow her to obtain a trial de novo before a jury on the issue of whether she voluntarily executed the agreement.

Husband contends that because this was an "agreed order," the case law relative to rule 171 is inapplicable. He further asserts that under the terms of the agreed order, Wife expressly waived her right to a de novo hearing. Alternatively, Husband argues that the trial court did not err in denying a de novo hearing because Wife did not offer any evidence on the issue of voluntariness at the hearing on her exceptions to the master's recommendations. Finally, Husband maintains that even if the trial court erred in denying the de novo hearing, such error was harmless.

## NATURE OF THE AGREED ORDER

In resolving this dispute, we must first determine the nature of the agreed order and whether its specific language precluded Wife's right to a de novo hearing. For the reasons stated below, we conclude that the agreed order constituted a rule 171 order and that the Wife did not expressly waive her right to a de novo hearing.

A trial court's authority to appoint a master is derived from three basic

---

**2.** The post-marital property agreement is not included in the record on appeal. Therefore, our understanding of the terms of the agreement is based solely on the descriptions thereof in the parties' briefs.

**3.** The agreed order provided that any objections to the master's recommendations had to be filed within ten days of the filing of the master's report. Without citing any supporting authority, Husband contends that Wife "judicially admitted" that her special exceptions were not timely because of her pleading that stated, "[the

master's report was] filed with this Court on or about *May 13, 1991....*" Regardless of the allegations in the pleadings, the file-marked copies establish the dates that the instruments were filed. We conclude that the clerk's file marks are the best evidence of the filing dates. Therefore, we hold that Wife's special exceptions were timely filed.

**4.** Unless otherwise indicated, all further references to rules are to the Texas Rules of Civil Procedure.

sources: the constitution, statutes, and litigant consent. *Abramson v. Abramson,* 788 S.W.2d 860, 862–63 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *see Simpson v. Canales,* 806 S.W.2d 802, 810–11 n. 12 (Tex.1991). We assume that the appointment was made pursuant to rule 171 of the Texas Rules of Civil Procedure if the order specifies the appointment of a master in chancery and the empowering language of the order tracks the language of rule 171. *Martin v. Martin,* 797 S.W.2d 347, 350 (Tex.App.—Texarkana 1990, no writ); *see also McCrory & Co. v. Avery Mays Constr. Co.,* 690 S.W.2d 333, 334 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Rule 171 permits appointment of a master only in "exceptional cases" where "good cause" is shown. *Simpson,* 806 S.W.2d at 811.

In entering the agreed order, the trial court found "that good cause has been shown the same being an exceptional case for the appointment of a Master in Chancery." The parties specified the powers of the master, closely tracking the language of rule 171. The language in the agreed order deviates from the language in rule 171 in two respects. First, the parties modified the time for filing objections to the master's recommendations. They agreed that any objections had to be filed within ten days of the filing of the master's report. The case law construing rule 171 otherwise provides that objections may be filed at any time before the trial court adopts the master's report. *McCrory,* 690 S.W.2d at 334; *Novotny v. Novotny,* 665 S.W.2d 171, 173 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Second, the parties modified the authority of the trial court to act upon the master's recommendations.[5]

■ Because the agreed order specifies the appointment of a master in chancery and the language substantially tracks the language of rule 171, we hold that the appointment was made pursuant .to rule 171. *See Martin,* 797 S.W.2d at 350. The fact that the parties agreed to the appointment and deviated from the language of rule 171 in two minor respects does not mean that the interpretative decisions of rule 171 are inapplicable. We conclude that the rule 171 case law is relevant except to the extent the terms of the agreed order differ from the specific language of the rule. To the extent that the language is different, the parties are bound by the language in the agreed order.

## LITIGANT'S RIGHT TO A DE NOVO PROCEEDING BEFORE A JURY UNDER A RULE 171 ORDER

■ When issues are referred to and heard by a master under rule 171, the master's report is conclusive on all issues except those specifically objected to. *Minnich v. Jones,* 799 S.W.2d 327, 328 (Tex. App.—Texarkana 1990, no writ); *Martin,* 797 S.W.2d at 350; *Cameron v. Cameron,* 601 S.W.2d 814, 815 (Tex.Civ.App.—Dallas 1980, no writ). To the extent the master's report is objected to, it is not binding. The issues of fact raised by the objections are to be tried de novo before the court if a jury has not been requested, or before a jury if one has been timely requested [6] and a jury fee has been paid.[7] *Minnich,* 799 S.W.2d at 328–29; *see also* Tex. Const. art. I, § 15; Tex. Const. art. V, § 10; Tex.Fam. Code Ann. § 3.61 (Vernon 1993). In other words, an objection does not provide merely the right to a hearing on whether the referring court will consider an issue in a trial de novo. When objections are made to the master's report, each party has the right to present evidence on the issues specified in the objections and have the court or jury decide those issues on the basis of the evidence presented in court. *Martin,* 797 S.W.2d at 350.

---

5. The exact language of this modification will be discussed in connection with Husband's argument that Wife waived her right to a de novo hearing.

6. A demand for a jury trial on the master's findings is timely if it is made before the trial court adopts the master's report. *Minnich,* 799 S.W.2d at 329; *Cameron,* 601 S.W.2d at 815.

7. It is undisputed that Wife paid a jury fee and timely made a demand for a trial de novo before a jury.

■ Under the case law interpreting rule 171, Wife's timely special exceptions to the master's finding were sufficient to enable her to obtain a trial de novo before a jury on the issue of voluntariness. *See Minnich,* 799 S.W.2d at 328; *Martin,* 797 S.W.2d at 350; *Cameron,* 601 S.W.2d at 815.

## WHETHER THE PARTIES WAIVED THEIR RIGHTS TO A DE NOVO HEARING BY THE LANGUAGE OF THE AGREED ORDER

■ Husband argues that the parties expressly waived their rights to de novo hearings on matters objected to. In support of this contention, Husband points to the fact that they specifically modified the trial court's authority to act upon the master's recommendations.

In connection with the court's authority to act upon a master's report, rule 171 states in pertinent part:

> The court may confirm, modify, correct, *reject,* reverse or recommit the report, as the court may deem proper and necessary in the particular circumstances of the case....

(Emphasis added.) The agreed order states in relevant part that: "The Court may confirm, modify, correct, *review,* reverse, or recommit the Master's report after it is filed...." (Emphasis added.) Husband argues that the deletion of the word "reject" and the addition of the word "review" reflect the parties' intent that the trial court would not retain the power to treat the master's recommendations as a nullity; but rather, the trial court would serve in an "appellate capacity" to review the master's report. We note that Husband cites no authority to support this argument. Moreover, we are not persuaded by Husband's interpretation.

Obviously, parties can agree to be bound by the master's recommendations. However, in the instances where the parties have been found to have waived their right to de novo hearings, the language of the order appointing the master was significantly dif-

ferent from the language in this agreed order. *See Flukinger v. Straughan,* 795 S.W.2d 779 (Tex.App.—Houston [14th Dist.] 1990, writ denied). In *Flukinger,* the parties agreed to the appointment of a master, and the order provided:

> By signing and approving this Order, all parties agree to be bound by the findings and conclusions of the Master as if this portion of the case had been tried to the Court.

*Id.* at 788. In concluding that the parties intended to waive their right to de novo hearings on issues objected to, the appellate court noted that the order contained no provision for review from the master's findings. In addition, the court focused on the fact that the parties agreed to be bound by those findings "as if this portion of the case had been tried by the Court." *Id.* Similar language was used in the *Abramson* order:

> The parties stipulate and agree and it is therefore **ORDERED, ADJUDGED** and **DECREED** that the parties will be bound by the findings of fact and conclusions of law to the same extent as if found and issued by this Court and specifically waive the right to trial by jury and to except to such report. The parties do not waive their right to appeal to an appellate court from the final judgment of the court.

*Abramson,* 788 S.W.2d at 862 n. 1.[8]

This agreed order contains express provisions for reviewing the master's findings, and there is no language to indicate that the parties agreed to be bound by the findings. In fact, the agreed order anticipates that the parties have the right to object to the master's report by setting forth the time limits in which such objections may be made. Therefore, we conclude that Wife did not expressly waive the right to a de novo hearing on her objections.

## LACK OF EVIDENCE AT HEARING ON WIFE'S SPECIAL EXCEPTIONS

■ Husband further argues that Wife waived her right to a trial de novo because

---

**8.** We note, however, that in *Abramson,* the appellate court was not required to consider whether such language waived the parties' right to de novo hearings.

she did not present any evidence on the issue of voluntariness at the hearing scheduled for her special exceptions. In support of this argument, Husband relies upon *Cameron,* 601 S.W.2d 814, and *Martin,* 797 S.W.2d 347. We conclude that Husband's reliance upon these cases is misplaced.

In *Cameron,* appellant complained of a decree of divorce that was based upon the trial court's action of adopting a master's report concerning the property division. In affirming the trial court's judgment, this Court held that a master's report is conclusive on issues considered by the master in the absence of proper objections. *Id.* at 815. In *Cameron,* after a referral under rule 171 and the filing of the master's recommendations, the parties appeared for a final hearing. The trial court indicated that it would essentially adopt the master's recommendations. At that time, appellant's attorney *orally* objected to certain portions of the report, but did not offer to produce any evidence concerning the matters covered by the master's findings. *Id.* In concluding that the oral objections were insufficient to require the court to hear evidence, we stated:

> [A] party dissatisfied with the report has the burden to make specific objections before the report is adopted by the court. If such objections are made, each party has the *right* to present evidence on the issues specified in the objections and have the court *or jury* decide those issues on the basis of the evidence presented in court.

*Id.* (citations omitted) (emphasis added). It does not appear that a jury had been requested or that a jury fee had been paid. Therefore, this Court further stated that there was no error because the appellant apparently acquiesced in the trial court's actions because she did not request an opportunity to put on evidence and did not make an offer of proof. *Id.* at 816.

In *Martin,* although appellant timely objected to the master's report, the trial court refused to hear evidence de novo. The trial court's action was affirmed because the appellate court held that the appellant had waived his right to complain when he did not make a bill of exceptions to show what evidence he would have offered had he been allowed to do so. *Martin,* 797 S.W.2d at 350–51. Here again, it appears that *Martin* did not involve a request for a jury trial or the timely payment of a jury fee.

A party excepting to a master's recommendations need only timely file a formal objection with the court to obtain a trial de novo. *See Martin,* 797 S.W.2d at 352 n. 4. If a party is entitled to a trial de novo, the trial court has no reason to inquire into the evidence heard by the master because the evidence concerning the issues objected to must be heard anew. *Cameron,* 601 S.W.2d at 815.

We conclude that Wife had no obligation to present evidence to the trial court on the issue of voluntariness because she was entitled to have this issue determined by a jury. In fact, given Wife's right to a jury trial, such a presentation would have been a useless and time-consuming undertaking.

## HARM ANALYSIS

As a final argument, Husband contends that even if Wife was entitled to a de novo hearing before a jury, the court's denial of such hearing was harmless error. Specifically, Husband argues that a refusal to grant a jury trial is harmless error if the evidence shows that no material issues of fact exist and an instructed verdict would have been justified. In support of this contention, Husband cites *Olson v. Texas Commerce Bank,* 715 S.W.2d 764 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). We do not find *Olson* to be controlling in this case. The cases construing rule 171 provide that if a party timely and formally objects to a master's ruling, that party is entitled to a de novo hearing before a judge or jury. *Martin,* 797 S.W.2d at 350. We conclude this right is automatic and is not subject to a harmless error analysis.

We sustain Wife's points of error. We reverse the trial court's judgment and remand the cause to the trial court.